UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DANIEL HELLER, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　　　v.<br><br>TARGET CORPORATION,<br><br>　　　　　　　　　　　　Defendant. | Case No. 1:13-cv-13257<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Daniel Heller ("Plaintiff") brings this class action against Defendant Target Corporation ("Target" or "Defendant"), on behalf of himself and all others similarly situated to obtain damages, restitution and injunctive relief for the Class, as defined below, from Defendant. Plaintiff makes the following allegations upon information and belief, except as to his own actions, the investigation of his counsel, and the facts that are a matter of public record:

**PARTIES**

1.　　Plaintiff is an individual who resides in the Commonwealth of Massachusetts.

2.　　Defendant Target is headquartered in Minneapolis, Minnesota, but operates retail stores throughout the United States.  Target is registered to do business in this judicial district, operates dozens of retail stores throughout this judicial district and regularly transacts business within this judicial district.

**JURISDICTION AND VENUE**

3.　　This Court has original jurisdiction pursuant to 28 U.S.C. § 1332 (d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interests and costs, and there are numerous class members who are citizens of states

1

other than Target's state of citizenship, which is Minnesota.

4. This Court has personal jurisdiction over Target because Target is authorized to do business in this state, operates dozens of retail stores within this judicial district and regularly transactions business within this judicial district.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this district and because Target is subject to personal jurisdiction in this District.

## **GENERAL ALLEGATIONS**

6. Target is the second-largest discount retailer in the United States and, as of 2013, is ranked 36th on the Fortune 500 list of top US companies, by revenue. Millions of Americans regularly shop at Target stores.

7. Plaintiff is a regular shopper at Target stores, and he used his American Express credit card to make a purchase at a Target store in Somerville, Massachusetts on December 1, 2013.

8. This action arises as a result of the data breach which allowed the theft of data from approximately 40 million credit and debit cards swiped in Target stores throughout the United States between November 27 and December 15, 2013.

9. News of the data breach was first published by a blogger (Brian Krebs of <http://krebsonsecurity.com/>) on or about December 18, 2013 before Target had done anything to notify its affected customers.

10. As widely reported by multiple new services on December 19, 2013: "Investigators believe the data was obtained via software installed on machines that customers use to swipe magnetic strips on their cards when paying for merchandise at Target stores."

<http://www.cbsnews.com/news/target-confirms-massive-credit-debit-card-data-breach/> (last visited December 20, 2013).

11. "The type of data stolen – also known as 'track data'—allows crooks to create counterfeit cards by encoding the information onto any card with a magnetic stripe." <http://krebsonsecurity.com/> last visited December 20, 2013).

12. The thieves may also have accessed PIN numbers for affected customers' debit cards, allowing thieves to withdraw money from those customers' bank accounts. (*Id.*)

13. Thieves could not have accessed this information and installed the software on Target's point-of-sale machines but for Target's negligence.

14. Target failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach.

15. As this news broke, Target finally released a statement concerning the data breach, but Target did not directly notify its affected customers. Rather, on December 19, 2013, Target posted a statement on its corporate website (but not on the shopping website regularly accessed by its customers), confirming "that the information involved in this incident included customer name, credit or debit card number, and the card's expiration date and CVV (the three-digit security code)." <https://corporate.target.com/discover/article/Important-Notice-Unauthorized-access-to-payment-ca> (last visited December 20, 2013).

16. In its December 19 statement concerning the data breach, Target also claimed to "have identified and resolved the issue," conveying a false sense of security to affected customers. (*Id.*)

17. On information and belief, Plaintiff's identifying and financial information was disclosed and compromised in the data breach.

## CONSEQUENCES OF DEFENDANT'S CONDUCT

18. The ramifications of Defendant's failure to keep class members' credit and debit card data secure are severe.

19. The information Defendant failed to keep secure, including Plaintiff's identifying information and other financial information, is "as good as gold" to identity thieves, in the words of the Federal Trade Commission ("FTC"). FTC, *About Identity Theft*, available at <http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html> (visited March 23, 2011). Identity theft occurs when someone uses another's personal identifying information, without permission, to commit fraud or other crimes. *Id*. The FTC estimates that as many as 9 million Americans have their identities stolen each year. *Id*.

20. Identity thieves can use the identifying data to open new financial accounts and incur charges on existing accounts, or clone ATM, debit, or credit cards. *Id*.

21. Identity thieves can use the personal information of the members of the Class, which Defendant failed to keep secure to perpetrate a variety of crimes. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license, or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

22. In addition, identity thieves may get medical services using the lost information of the Plaintiff and members of the Class or commit any number of other frauds, such as obtaining a job, procuring housing, or even giving false information to police during an arrest.

23. Annual monetary losses from identity theft are in the billions of dollars. According to a Presidential Report on identity theft produced in 2008:

> In addition to the losses that result when identity thieves fraudulently open accounts or misuse existing accounts,… individual victims often suffer indirect financial costs, including the costs incurred in both civil litigation initiated by creditors and in overcoming the many obstacles they face in obtaining or retaining credit. Victims of non-financial identity theft, for example, health-related or criminal record fraud, face other types of harm and frustration.
>
> In addition to the out-of-pocket expenses that can reach thousands of dollars for the victims of new account identity theft, and the emotional toll identity theft can take, some victims have to spend what can be a considerable amount of time to repair the damage cause by identity thieves. Victims of new account identity theft, for example, must correct fraudulent information in their credit reports and monitor their reports for future inaccuracies, close existing back accounts and open new ones, and dispute charges with individual creditors.

*The President's Identity Theft Task Force Report* at p.21 (Oct. 21, 2008), available at

<http://www.idtheft.gov/reports/StrategicPlan.pdf> (last visited December 20, 2013).

24.     According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement official told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

GAO, *Report to Congressional Requesters*, at p.33 (June 2007), available at

<http://www.gao.gov/news.items/d07737.pdf> (last visited December 20, 2013).

25.     Plaintiff and the Class he seeks to represent now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

## CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action on his own behalf, and on behalf of all other persons similarly situated ("the Class"). The Class that Plaintiff seeks to represent is:

> All persons who used credit or debit cards at Target Corporation stores in Massachusetts during the period from on or about November 27 to on or about December 15, 2013, and whose personal and/or financial information was taken

by unauthorized persons from Target. Excluded from the Class are Defendant; officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest; the affiliates, legal representatives, attorneys, heirs, and assigns of the Defendant. Also excluded from the Class are any judicial offices or employees of the Court who are involved with this action in any way.

27. The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, based on information and belief, there are believed to be approximately 950,000 Class members.

28. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

29. This action satisfies the requirements of Federal rule of Civil Procedure 23(b)(3) because it involves questions of law and fact common to the members of the Class that predominate over an questions affecting only individual members, including, but not limited to:

    a. Whether Defendant unlawfully used, maintained, lost or disclosed Class members' personal and/or financial information;

    b. Whether Target unreasonably delayed in notifying affected customers of the data breach;

    c. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the data breach;

    d. Whether Target's conduct was negligent;

    e. Whether Defendant acted willfully and/or with oppression, fraud, or malice;

    f. Whether Defendant's conduct constituted Intrusion;

    g.    Whether Defendant's conduct constituted Public Disclosure of Private Facts;

    h.    Whether Defendant's conduct constituted Misappropriation of Likeness and Identity;

    i.    Whether Defendant's conduct constituted Bailment;

    j.    Whether Defendant's conduct constituted Conversion;

    k.    Whether Plaintiff and the Class are entitled to damages, civil penalties, punitive damages, and/or injunctive relief.

30. Plaintiff's claims are typical of those of other Class members because Plaintiff's information, like that of every other class member, was misused and/or disclosed by Defendant.

31. Plaintiff will fairly and accurately represent the interests of the Class.

32. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant and would lead to repetitive adjudication of common questions of law and fact. Accordingly, class treatment is superior to any other method for adjudicating the controversy. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action under Rule 23(b)(3).

33. Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

## COUNT I

### Invasion of Privacy – Intrusion, Public Disclosure of Private Facts, and Misappropriation of Likeness and Identity

34. Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

35. Plaintiff had a reasonable expectation of privacy in the Private Information Defendant mishandled.

36. By failing to keep Plaintiff's Private Information safe, and by misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant invaded Plaintiff's privacy by:

    a. intruding into Plaintiff's private affairs in a manner that would be highly offensive to a reasonable person;

    b. publicizing private facts about Plaintiff, which is highly offensive to a reasonable person; and,

    c. using and appropriating Plaintiff's identity without Plaintiff's consent.

37. Defendant knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's position would consider Defendant's actions highly offensive.

38. Defendant invaded Plaintiff's right to privacy and intruded into Plaintiff's private affairs by misusing and/or disclosing Plaintiff's Private Information without his informed, voluntary, affirmative and clear consent.

39. As a proximate result of such misuse and disclosures, Plaintiff's reasonable expectations of privacy in his Private Information was unduly frustrated and thwarted. Defendant's conduct amounted to a serious invasion of Plaintiff's protected privacy interests.

40. In failing to protect Plaintiff's Private Information, and in misusing and/or disclosing Plaintiff's Private Information, Defendant has acted with malice and oppression and in conscious disregard of Plaintiff's and the Class members' rights to have such information kept confidential and private. Plaintiff, therefore, seeks an award of punitive damages on behalf of himself and the Class.

## COUNT II

### Negligence

41. Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if fully set forth herein.

42. Defendant came into possession of Plaintiff's Private Information and had a duty to exercise reasonable care in safeguarding and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

43. Defendant had a duty to timely disclose that Plaintiff's Private Information within its possession had been compromised.

44. Defendant had a duty to have procedures in place to detect and prevent unauthorized dissemination of Plaintiff's Private Information.

45. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff by failing to exercise reasonable care in protecting and safeguarding Plaintiff's Private Information within Defendant's possession.

46. Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff by failing to exercise reasonable care by failing to have appropriate procedures in place to detect and prevent dissemination of Plaintiff's Private Information.

47. Defendant, through its actions and/or omissions, unlawfully breached its duty to

timely disclose to the Plaintiff and the Class members the fact that their Private Information within its possession had been compromised.

48.  Defendant's negligent and wrongful breach of its duties owed to Plaintiff and the Class proximately caused Plaintiff's and Class members' Private Information to be compromised.

49.  Plaintiff seeks the award of actual damages on behalf of himself and the Class.

## COUNT III

### Bailment

50.  Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if set forth herein.

51.  Plaintiff and the Class members delivered and entrusted their Private Information to Defendant for the sole purpose of receiving services from Defendant.

52.  During the time of bailment, Defendant owed Plaintiff and the Class members a duty to safeguard this information properly and maintain reasonable security procedures and practices to protect such information. Defendant breached this duty.

53.  As a result of these breaches of duty, Plaintiff and the Class members have suffered harm.

54.  Plaintiff seeks actual damages on behalf of himself and the Class.

## COUNT IV

### Conversion

55.  Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if set forth herein.

56.  Plaintiff and Class members were the owners and possessors of their Private

Information. As the result of Defendant's wrongful conduct, Defendant has interfered with the Plaintiff's and Class members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

57. As a direct and proximate result of Defendant's conduct, Plaintiff and the Class members suffered injury, damage, loss, or harm and therefore seek compensatory damages.

58. In converting Plaintiff's Private Information, Defendant has acted with malice, oppression and in conscious disregard of the Plaintiff's and Class members' rights. Plaintiff, therefore, seeks an award of punitive damages on behalf of himself and the Class.

59. Plaintiff and the Class members did not consent to Defendant's mishandling and loss of their Private Information.

## COUNT V

### Breach of Implied Contract

60. Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if set forth herein.

61. When they confided their private and confidential debit card and credit card information to Target in order to make purchases at Target's stores, Plaintiff and the Class members entered into implied contracts with Target under which Defendant agree to safeguard and protect all such information and to notify Plaintiff and the Class members that the confidentiality of such information was compromised.

62. Plaintiff and the Class would not have entrusted their private and confidential information financial and personal information to Target in the absence of such an implied contract with Target.

63. Target breached the implied contracts they made with Plaintiff and the Class

members by failing to safeguard such information and failing to notify them promptly of the intrusion into its computer systems that compromised such information.

64. The damages sustained by Plaintiff and the Class members as described above were the direct and proximate result of Target's breaches of these implied contracts.

## COUNT VI

### Breach of Implied Warranty

65. Plaintiff incorporates the substantive allegations contained in all previous paragraphs as if set forth herein.

66. Target provided for its customers an electronic payment processing system consisting of payment terminals, computer servers, an electronic network, with associated computer software and hardware to enable those customers who wished to pay by debit card or credit card to make payment for purchases at Target and required all such customers to use such system for such purchases. The use of this system by Target's customers was for the benefit of Target, as well as, its customers.

67. Target gave each customer who used such system an implied warranty that such system was fit for its intended purpose, namely the safe and secure processing of credit and debit card payment transactions.

68. During the Class Period, such warranty was breached in that such system was not fit for its intended purposes, namely the safe and secure processing of credit and debit card payment transactions and, in fact, allowed wrongdoers to steal customers' confidential personal and financial data.

69. Plaintiff and the Class members were damaged by such breach of warranty in the manner alleged herein.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff prays for judgment as follows:

A.     For an Order certifying this action as a class action and appointing Plaintiff and their Counsel to represent the Class;

B.     For equitable relief enjoining the Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to the Plaintiff and Class members;

C.     For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

D.     For an award of punitive damages;

E.     For an award of costs of suit and attorneys' fees, as allowable by law; and

F.     Such other and further relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of their claims to the extent authorized by law.

Dated: December 23, 2013                         By his attorneys,

                                          **/s/ Adam M. Stewart**
                                          Edward F. Haber (BBO# 215620)
                                          Thomas G. Shapiro (BBO# 454680)
                                          Adam M. Stewart (BBO# 661090)
                                          SHAPIRO HABER & URMY LLP
                                          53 State Street
                                          Boston, MA 02109
                                          Telephone: (617) 439-3939
                                          Facsimile: (617) 439-0134
                                          Email: ehaber@shulaw.com
                                                     tshapiro@shulaw.com
                                                     astewart@shulaw.com